IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Sabrina D. Davis, ) | |
| ) | Civil Action No. 6:16-3100-TMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| Bankers Life and Casualty Company, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Sabina D. Davis ("Davis"), proceeding *pro se*, filed this action against Defendant Bankers Life and Casualty Company ("Bankers Life") in the Greenville County Court of Common Pleas, alleging that Bankers Life engaged in bad faith and "post-claim underwriting" in denying her claims for benefits from a life insurance policy. On September 13, 2016, Bankers Life timely removed the case to this court. (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02, D.S.C., this matter was referred to a magistrate judge for pretrial handling. Because the magistrate judge received various documents outside the pleadings, he treated the motion to dismiss as a motion for summary judgment. (ECF No. 18 at 2–3). Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court grant Bankers Life's motion for summary judgment. (ECF No. 18). The parties were advised of their right to file objections to the Report. (ECF No. 18 at 5). On March 14, 2017, Davis filed objections. (ECF No. 21). Bankers Life filed a response on March 29, 2017 (ECF No. 27), to which Davis filed a reply on April 6, 2017 (ECF No. 28). On June 16, 2017, Davis filed an emergency motion to remand. (ECF No. 32).

The recommendations set forth in the Report have no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews*

1

*v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Reports to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### I. Motion to Remand

The record makes clear that this action was removed to this court pursuant to 28 U.S.C. §§ 1441(a) & 1332(a). "When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant . . . may remove the action to federal court, provided that no defendant is a citizen of the State in which such action is brought." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (internal citations and quotations omitted). The magistrate judge found that Bankers Life's removal of this action was timely. (ECF No. 18 at 1).

Davis argues that because an agent of Bankers Life, Ursula Schneider-Wewer, is a resident of Spartanburg, South Carolina, diversity is destroyed for the purpose of this court's jurisdiction. (ECF No. 32 at 2). However, a corporation's citizenship is based on its state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1). The Supreme Court defines principal place of business to mean "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77,

80 (2010). According to Bankers Life's notice of removal (ECF No. 1 at 5) supported by an affidavit of Karl Kindig[1] (ECF No. 1-2), Bankers Life is an Illinois corporation with its principal place of business in Illinois. Davis has not alleged that South Carolina is Bankers Life's principal place of business or that South Carolina is where the corporation maintains its "nerve center." *Hertz*, 559 U.S. at 81, 93. Further, Davis' argument that remand is warranted because South Carolina law is the basis of this case fails because this case was removed for diversity and this court must apply South Carolina law. *See* 28 U.S.C. §§ 1441 & 1332; *Interstate Fire & Cas. Co. v. Dimensions Assurance Ltd.,* 843 F.3d 133, 136 (4th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (explaining that a federal court sitting in diversity jurisdiction must apply the choice of law principles of the forum state)). Therefore, Davis fails to demonstrate that this court lacks subject matter jurisdiction and her motion to remand is denied. *See* 28 U.S.C. § 1447(c).[2]

## II. Motion to Strike

On April 6, 2017, Davis filed a reply to Bankers Life's response to her objections. (ECF No. 28). On April 14, 2017, Bankers Life filed a motion to strike Davis' reply, asserting that when replies are allowed they cannot contain new issues, and that Davis' reply centers around previously unpled allegations. (ECF No. 29). Replies are governed by Local Rule 7.07, which states that, "Replies to responses are discouraged. However, a party desiring to reply to maters raised initially in a response to a motion or in accompanying supporting documents shall file the reply within seven (7) days after service of the response, unless otherwise ordered by the court." Local Rule 7.07, D.S.C.

---

[1] Senior Vice President and Secretary of Bankers Life and Casualty Company, authorized to make an affidavit on Bankers Life's behalf. (ECF No. 1-2).
[2] In relevant part, 28 U.S.C. § 1447(c) provides, "A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . ."

Construing Davis' pleadings liberally, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), the court will consider Davis' reply to the extent that it does not go beyond the scope of issues addressed or raised in Bankers Life's response. Accordingly, Bankers Life's motion to strike is denied.

### III. Motion for Summary Judgment

The magistrate judge recommended that the court dismiss Davis' claim because she filed her claim outside of the statutory limitations period. (ECF No. 18 at 4). In South Carolina, claims for breach of insurance contract and insurance bad faith are subject to a three-year statute of limitations, *Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus., Inc.*, No. 2:08-2043-MBS, 2010 WL 1345287 (D.S.C. Mar. 30, 2010) (citing S.C. Code Ann. § 15-3-530), which begins to run when the underlying cause of action reasonably ought to have been discovered, *Martin v. Companion Healthcare Corp.*, 593 S.E.2d 624, 627 (S.C. Ct. App. 2004). According to Davis' complaint, Bankers Life denied her claim for benefits on July 12, 2013.[3] (ECF No. 1-1 at 7). Thus, because it is undisputed that Davis did not file her case in state court until August 10, 2016, the Report recommends that this case is outside of the limitations period and untimely. Despite Davis' argument that she did not actually discover her claim until November or December 2013 (after she and her attorney unsuccessfully attempted to convince Bankers Life to reverse its decision) the magistrate judge found that the limitations period began when Bankers Life denied the claim—July 12, 2013 according to Davis' own admission. (ECF No. 18 at 4); *see e.g., Jeri M. Suber Credit Shelter Trust v. State Auto Prop. And Cas. Ins. Co.*, No. 3:08-3387,

---

[3] In her complaint, Davis asserted that her claim for benefits was denied on July 12, 2013. (ECF No. 1-1 at 7). In her reply, she stated that July 8, 2013, was the date that the denial letter was issued. (ECF No. 28 at 1). The July 8, 2013 letter was submitted as an exhibit to Bankers Life's reply. (ECF No. 16-1 at 2). For the purposes of this order, the court will accept the date asserted by Davis in her complaint as the date she *received* or became aware of the denial letter. *See, e.g., Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1197 n.6 (2013) ("Factual assertions in pleadings . . . unless amended, are considered judicial admissions conclusively binding on the party who made them.").

2009 WL 4730630, at *4 n.10 (D.S.C. Dec. 4, 2009) (noting that "the statute of limitations for a bad faith action against [insurer] for denial of additional insurance benefits would begin running when [insurer] denied coverage").

As her objection, Davis argues that the magistrate judge incorrectly calculated the statute of limitations. Her argument is based on language in the July 15, 2013 letter[4] stating:

> If you believe this claim was denied in error, please submit written comments, documents, or records not already provided to our company for further review. . . . [Bankers Life] will consider your appeal and will contact you upon conclusion of the review.

(ECF Nos. 14-1 at 22 and 21 at 2).[5] Davis alleges that the cause of action did not accrue until December 2, 2013, when Bankers Life declined to change its position. (ECF No. 21 at 2). She argues that Bankers Life did not reach its final decision until December 2, 2013, due to the "appeal" process and that she believed that the additional information that she submitted would change the insurer's position. (ECF No. 21 at 2–3).

Under South Carolina law, claims for bad faith refusal to pay insurance benefits and breach of insurance contract are subject to a three-year statute of limitations. S.C. Code Ann. § 15-3-530(8); *Liberty Mut. Fire Ins. Co. v. J.T. Walker Indus., Inc.*, No. 2:08-2043-MBS, 2010 WL 1345287, at *9 (D.S.C. Mar. 30, 2010). "These statutes of limitations are modified by a doctrine known as the 'discovery rule,' " pursuant to which " 'the statute of limitations [only] begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct.' " *Wellin v. Wellin*, No. 2:13-1831-DCN, 2014 WL 234216 at *3 (quoting *True v. Monteith*, 489 S.E.2d 615, 616

---

[4] In her objections, Davis incorrectly cites the magistrate judge as calculating the date of denial as July 15, 2013. (ECF No. 21 at 2). The magistrate judge stated, as did Davis in her complaint, that the date of denial was July 12, 2013. (ECF Nos. 1-1 at 7 and 18 at 4). The letter dated July 15, 2013, was not the original denial letter, but, rather, a follow up from Bankers Life to a communication with Davis regarding the denial. (ECF No. 28-1).
[5] The July 8, 2013 letter also contained similar language. (ECF No. 16-1 at 2).

(S.C. 1997)). To exercise reasonable diligence, " 'the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist.' " *Id*. (quoting *Dean v. Ruscon Corp*., 468 S.E.2d 645, 647 (S.C. 1996)). "[W]hether the particular plaintiff actually knew he had a claim is not the test." *Id*. (quoting *Bayle v. S.C. Dep't of Transp*., 542 S.E.2d 736, 740 (S.C. Ct. App. 2001)).

The facts in the record support dismissal of Davis' claim pursuant to the applicable statute of limitations. As noted above, the statute of limitations begins to run when the facts and circumstances place a reasonable person of common knowledge on notice that a claim against another person might exist. *Wellin*, 2014 WL 234216, at *3; *see Jeri M. Suber Credit Shelter Trust*, 2009 WL 4730630, at *4 n.10 (noting that "the statute of limitations for a bad faith action against [insurer] for denial of additional insurance benefits would begin running when [insurer] denied coverage").

Courts in this district have considered factually similar circumstances in *Sink v. BB&T Ins. Servs., Inc.*, C.A. No. 6:14-375, 2015 WL 12838971 (D.S.C. Feb. 18, 2015) and *Parsons v. Standard Ins. Co*., 185 F. Supp. 3d 909 (N.D. W. Va. 2016). *Sink* involved an insured party asserting in a suit filed January 8, 2014, inter alia, bad faith refusal to pay insurance benefits and breach of contract against an insurance company with which he had a policy. 2015 WL 12838971. The Plaintiff in *Sink* conceded that he was told by the defendant that he did not have coverage in June 2010 through a letter,[6] but argued that the insurer had yet to make its final determination because the letter stated, "[t]he position of Travelers on this matter is based upon our assessment of the information you feel would be relevant to our coverage determination,

---

[6] The letter stated, "a determination was made that the theft of your personal property is not covered by your policy." *Sink*, 2015 WL 12838971, at *2.

please forward that information to me for our consideration [sic]." *Id*. at *3. The court found that the foregoing sentence did not contradict the unambiguous language of the letter, which stated, "Since theft is not one of the named perils there is no coverage for this loss." *Id*. Further, the court found that the plaintiff's hope that his further communications with his agent and with the insurer would result in coverage did not change the fact that the language of the letter as well as his own admissions indicated that he knew or should have known that a cause of action existed when he received the letter; thus the statute of limitations began to run upon the letter's receipt. *Id*.

Similarly, *Parsons* involved an insured suing an insurer for bad faith and breach of contract. 185 F. Supp. 3d 909. The insurer denied coverage and ceased payments under the disability income insurance policy on February 13, 2014. *Id*. at 911. The plaintiff appealed the denial and the parties engaged in several rounds of correspondence and requests for additional documentation until, by letter dated January 15, 2015, the defendants affirmed their denial of benefits and refused to pay further under the policy. *Id*. The court found that the denial of coverage occurred on February 13, 2014, when plaintiff received the first denial letter, and therefore, his cause of action accrued and the statute of limitations began to run on that date.[7] *Id*. at 912–13. The court further addressed the plaintiff's argument that pursuant to equitable estoppel, the statute of limitations should not have begun to run until January 15, 2015, the date on which the plaintiff received the letter denying his appeal, because there was a chance that the defendants would change their minds at some point.[8] *Id*. at 913. However, the court found that:

---

[7] Under the "discovery rule," West Virginia law, like South Carolina law, states that the statute of limitations begins to run when the plaintiff knew or should have known of the elements of a possible cause of action. *Parsons*, 185 F. Supp. 3d at 913.

[8] The insurer's initial denial letter informed the plaintiff of his right to seek review of the denial and a subsequent letter seeking documentation informed him that, "[b]ecause we believe the above proof of loss documentation is required before we are able to make a *final determination* on your claim, we ask that you take appropriate steps necessary to provide the requested information. . . ." *Id*. at 915.

> An insured's appeal is simply a hope that the insurer will reconsider the decision it has already made. The mere potential that an insurer might reverse its position cannot qualify as an affirmative act sufficient to induce a plaintiff to forego filing suit, and it certainly is not a promise that it will not plead the statute of limitations.

*Id*. at 915.

In the present case, it is clear from the face of the complaint that the initial denial of coverage letter was issued on July 8, 2013 (ECF No. 16-1 at 2), and that Davis was aware of the denial of coverage on July 12, 2013. (ECF No. 1-1 at 7). Her complaint states, "A claim for benefits was submitted on April , 2013 [sic] and *denied on July 12, 2013*." *Id*. In fact, Davis sought out and hired an attorney on July 23, 2013. (ECF Nos. 14 at 1 and 14-1 at 3). The July 8, 2013 letter stated, "Based on the medical facts received and our underwriting guidelines, Bankers Life and Casualty must declare [the policy] null and void from its date of issue. . . . [W]e regret we cannot provide the policy's benefits now or at any time in the future. . ." (ECF No. 16-1 at 2). The unambiguous language of the letter, Davis' retaining of legal counsel promptly after receiving the letter, and Davis' admission in her complaint all indicate that she knew or reasonably should have known that a claim against Bankers Life might have existed at that time. *See Wellin*, 2014 WL 234216, at *3. Davis' further communication with Bankers Life and filing of additional information with the hope of receiving a different result, subsequent to the initial denial, was not sufficient to stay the statute of limitations.

In her reply, Davis attempted to distinguish the facts of *Sink*, 2015 WL 12838971, from the present situation because the insurer in *Sink*, Traveler's, specifically informed Sink that theft was not covered under the policy. (ECF No. 28 at 2). Davis argues that Bankers Life was not specific enough in the letter, in which it stated the policy was null and void due to medical misrepresentation on the insurance application in the form of a health question answered

8

negatively which should have been answered positively. (ECF Nos. 16-1 and 28 at 2–3). Davis claimed that she was led to believe that the denial was not final. *Id*. However, the July 8, 2013 denial letter was unambiguous in stating that the policy was null and void and that Bankers life would not provide benefits. (ECF No. 16-1). The July 15, 2013 letter clarified exactly which response contained a material misrepresentation. (ECF No. 28). Even if the second letter, dated July 15, 2013, was deemed to start the statute of limitations, Davis' claim would remain barred. Furthermore, Davis' argument regarding an unrelated lawsuit in which Bankers Life was a defendant is without merit; the court will not consider the "prior bad acts" of the insurer based on the facts of an unrelated lawsuit. Additionally, Davis argues for the first time in her reply that the July 8, 2013 letter was a faxed copy and that she did not receive a refund of premiums (as provided for in the letter) until over a year later. (ECF Nos. 28 at 3 and 28-2); *see also Penguin Restoration, Inc. v. Nationwide Mut. Ins., Co.*, C.A. No. 5:13-63-BO, 2014 WL 715123 (E.D.N.C. Feb. 21, 2014) ("The Court has ample authority to strike arguments made for the first time in a reply brief."). Davis provides no authority supporting the relevance of insurance premium refunds to a statute of limitations issue. Accordingly, for the above reasons, the applicable statute of limitations began to run on July 12, 2013, and Davis' suit filed August 10, 2016, in state court is barred because of South Carolina's three-year statute of limitation.

Finally, the court notes that following the denial of Davis' "appeal" in the December 2, 2013 letter (ECF No. 14-1 at 22), Davis had over two and a half years remaining in which to timely file her claim. She waited approximately two years and eight months following the denial of her "appeal" to file suit in state court (ECF No. 1). This undercuts the assertion that she delayed filing suit solely because of the belief that the insurer might change its decision.

## IV. Conclusion

After a thorough review of the Report and the record in this case, the court adopts the magistrate judge's Report (ECF No. 18) and incorporates it herein. For the foregoing reasons, Davis' emergency motion to remand (ECF No. 32) is **DENIED**; Bankers Life's motion to strike Davis' reply (ECF No. 29) is **DENIED**; and Bankers Life's motion for summary judgment (ECF No. 6), is **GRANTED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Court Judge

June 23, 2017
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.